ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 5 1999

NANCY DOHERTY, CLERK
By_____
Deputy

| | | |
|---|---|---|
| **J.C. MORRIS AND NORTH AMERICAN EQUIPMENT COMPANY,** | § § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:98-CV-2092-L |
| | § | |
| **RODNEY E. SLATER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF TRANSPORTATION, ET AL.,** | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion for Preliminary Injunction, filed September 16, 1998.

On December 15, 1998, the court conducted a hearing thereon. After consideration of the motion,

Defendants' responses, Plaintiffs' reply, the evidence, the arguments of counsel presented at the

hearing, and the applicable authority, the court concludes that the motion should be **denied**.

### I. Factual Background

Plaintiffs, an individual and his business, own property near O'Connor Boulevard in Irving,

Texas. Defendants are various governmental entities, specifically the United States Department of

Transportation, the Federal Highway Administration, the Texas Department of Transportation, the

City of Irving, Texas, and Dallas County, Texas, and responsible individuals in those entities.

Plaintiffs claim that Defendants are allowing expansion of a part of O'Connor Boulevard in violation

of environmental statutes and regulations. The O'Connor Boulevard Expansion Project ("the

1



ENTERED ON DOCKET

JAN 1 5 1999

U.S. DISTRICT CLERK'S OFFICE

Project") involves widening approximately 2.64 miles of O'Connor Boulevard from Spur 348 to State Highway 161 from a two-lane undivided roadway into a six-lane divided roadway with three northbound and three southbound lanes divided by a median. Plaintiffs claim that in approving the Project without an Environmental Impact Statement ("EIS") being produced, Defendants have violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and Section 4(f) of the Department of Transportation Act (codified at 49 U.S.C. § 303). Plaintiffs seek to enjoin and prohibit Defendants from proceeding with the funding of, the contracting for, and the construction of the Project until the court holds a trial on the merits of their claims.

Defendants contend that they have complied with all statutory and regulatory requirements and that no EIS is required. Defendants, however, have agreed to postpone the opening of bids for construction and commencement of work on the project until the resolution of Plaintiffs' motion.

## II. **Legal Standard**

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction: 1) a substantial likelihood that the plaintiff will prevail on the merits; 2) a substantial threat that the plaintiff will suffer irreparable injury if the relief is not granted; 3) the threatened injury outweighs the threatened harm that the relief may do to the defendant; and 4) the granting of the relief will not disserve the public interest. Canal Authority of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974); Sierra Club, Lone Star Chapter v. F.D.I.C., 992 F.2d 545, 551 (5th Cir. 1993); Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987). A preliminary injunction should only be granted if the movant has clearly carried the burden of persuasion on all four prerequisites, and "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the

rule." <u>Mississippi Power & Light Co. v. United Gas Pipe Line Co.</u>, 760 F.2d 618, 621 (5th Cir. 1985).

### III. Analysis

### A. Substantial Likelihood of Success on the Merits

### 1. Introduction

Upon review of the Project, the Federal Highway Administration initially approved its classification as a Categorical Exclusion pursuant to 23 C.F.R. § 771.117 and 40 C.F.R. §1508.4, which apply to actions that individually or cumulatively do not have a significant effect on the human environment and have been found to have no such effect in procedures adopted by a federal agency. Subsequently, an Environmental Assessment was prepared pursuant to 23 C.F.R. § 771.119 and 40 C.F.R. § 1508.9, and thereafter the Federal Highway Administration made a Finding of No Significant Impact ("FONSI") pursuant to 23 C.F.R. § 771.121 and 40 C.F.R. § 1508.13. Plaintiffs claim that the Environmental Assessment was inadequate because it failed to consider critical evidence and that the FONSI based on the Environmental Assessment was arbitrary and capricious. Plaintiffs initially challenged the Categorical Exclusion finding, but later learned of the subsequent FONSI and now challenge that finding. Since the basis for approval of the Project was the FONSI, Plaintiffs' complaints about the prior Categorical Exclusion are moot.

Plaintiffs allege various NEPA and Section 4(f), *supra*, deficiencies, and contend that they are likely to succeed on the merits of these claims. Specifically, they contend that: 1) Defendants failed to demonstrate that the project will not significantly impact growth, land use, and the environment (including impacts on hydrologic and hydraulic water, solid and hazardous waste, water quality and navigable waters, use of an adjoining park, and cumulative impacts), 2) Defendants

3

improperly segmented the Project because it is the first part of a larger project involving three or four more roadway developments for that area, and 3) Defendants failed to consider any alternatives to the Project.

Defendants contend that the Environmental Assessment for the Project was properly prepared, considered, and justifies the FONSI (finding of no significant impact), which obviates the need for an EIS. For this reason, Defendants claim that Plaintiffs' motion should be denied.

### 2. NEPA Claims

Plaintiffs cite and rely on Fritiofson v. Alexander, 772 F.2d 1225, 1238 n.7 (5th Cir. 1985) for the proposition that an EIS must be prepared when a federal action may have a significant impact on the quality of the human environment, and that "[t]he test is whether there is a possibility, not a certainty, of significant impacts." Plaintiffs' reliance upon the language in Fritiofson is misplaced and necessarily assumes that an EIS is required. An EIS is not required in every instance. If it were required in every instance, indeed there would be no need for an Environmental Assessment. An Environmental Assessment "is prepared in order to determine whether an EIS is required." Sierra Club v. Espy, 38 F.3d 792, 802 (5th Cir. 1994). An Environmental Assessment is a "rough-cut low-budget [EIS]" intended to determine whether environmental effects are significant enough to warrant preparation of a full-fledged EIS, which is expensive and takes considerable time to prepare. Sabine River Authority v. U.S. Department of Interior, 951 F.2d 669, 677 (5th Cir. 1992), cert. denied, 506 U.S. 823 (1992). The Environmental Assessment "will come to one of two findings: either that the project requires the preparation of an EIS to detail its environmental impact, or that the project will have no significant impact (a 'FONSI') necessitating no further study of the environmental

4

consequences which would ordinarily be explored through an EIS." Id. Once a determination of no significant impact on the environment has been made, the agency has completed its assigned task.

### 3. Section 4(f) Claims

Plaintiffs also allege that Bird's Fort Trail Park ("the Park"), a small portion of which will be affected by the Project, is covered by Section 4(f), which precludes using land on public parks unless there is no prudent and feasible alternative to using that land, and the program or project includes all possible planning to minimize harm to the park. 49 U.S.C. § 303; 23 U.S.C. § 138; 23 C.F.R. § 771.135. Plaintiffs contend that Defendants have approved the Project without considering feasible and prudent alternatives or plans to minimize harm to the Park. Defendants claim that they were exempted from complying with section 4(f) because of 23 C.F.R. § 771.135(h)'s exemption, which allows for a project to proceed without consideration under 4(f) if the property interest in the lands was acquired for transportation purposes prior to the designation or change in the determination of significance and if an adequate effort was made to identify properties protected by 4(f) prior to acquisition.

Defendants presented testimony that when the City of Irving received the Park property, it was aware that the right-of-way was reserved for transportation purposes, and that no public funds were used to operate the Park prior to that time. A Texas Department of Transportation design engineer testified that the Project did not impact any 4(f) properties. After discussing that exemption, a district engineer for the Federal Highway Administration testified that the Project did not require the taking of any property eligible for 4(f) protection, including the Park. The Environmental Assessment included a discussion of the Project's impact on the Park and a discussion that the Park's warranty deed contained language that certain parcels had been dedicated

5

for transportation purposes, including the widening of O'Connor Boulevard. Plaintiffs counter that the Park had been designated as park land long before it was acquired by the City of Irving and that there was no reservation for transportation purposes before its designation as park land. They also insist that at the time of the conveyance of the Park to the City of Irving, there was no projected right-of-way for street and road purposes, and thus nothing to reserve for transportation purposes.

Plaintiffs filed affidavits by several individuals, including the project manager of a local environmental services company and a consulting water resources engineer. These affidavits question and dispute some of the studies and conclusions contained within the Environmental Assessment, delineate things that were not considered therein, and make suggestions for more thorough evaluation of other issues, including those related to hydrology, sediment, and alternative alignment of the Project.

At the hearing on the motion, Defendants presented testimony from the district engineer for the north district in the Texas division office of the Federal Highway Administration, a civil engineer with a speciality in hydraulics and hydrology, a design engineer with the Texas Department of Transportation, the Superintendent of Park Planning and Construction for the City of Irving Parks and Recreation Department, and the Director of Traffic and Transportation for the City of Irving. That testimony included statements that the Environmental Assessment was "very adequate," that the Project will not have any significant impact on flooding in the Trinity basin and that Plaintiffs' property is outside the flood plain of the Trinity River. Testimony also indicated that all of the patterns of surface water flow that are existing today will be maintained after the Project was completed, that there will be no change in the pattern of the flow, and that the Project will have no significant impact on the hydraulics and hydrology of the Trinity River. There was also testimony

6

that the Elm Fork part of the Trinity River and Hackberry Creek are not navigable waters and that Defendants had complied with all relevant permits relating to those bodies of water. Testimony was also presented that the Environmental Assessment considered 19 hazardous waste/substance sites within a one-mile radius of the Project and that none of them was close enough be of concern. Testimony further indicated that the other allegedly segmented portions, of which the Project is purportedly a part, are actually separate and unrelated to the Project and that it is questionable if the others would ever be constructed. According to the testimony, the Project alone has independent utility and would stand alone as a benefit to the citizens of Irving. The Environmental Assessment's "Other Alternatives" section stated that the only other option considered was a "no build" alternative, which means that O'Connor Boulevard would not be expanded as contemplated by Defendants.

### 4. Standard of Review

A court reviews an agency's decision not to prepare an EIS under the arbitrary and capricious standard. Sabine River Authority, 951 F.2d at 677-78. Under this highly deferential standard of review, a reviewing court may not substitute its judgment for that of the agency, but rather must studiously review the record to ensure that the agency has arrived at a reasoned judgment based on a consideration and application of the relevant factors. Id. at 678. When conflicting evidence is before the agency, it has the discretion to accept or reject from the several sources of evidence and may even rely on the opinions of its own experts, so long as they are qualified and express a reasonable opinion. Id.

An Environmental Assessment is a "concise" document which "briefly" discusses the relevant issues, and concludes that either an EIS is necessary or makes a finding of no significant impact. 40 C.F.R. § 1508.9; Sabine River Authority, 951 F.2d at 677. NEPA requires that the

7

decision to go forward with a federal project which significantly affects the environment be an environmentally conscious one, but does not command the agency to favor an environmentally preferable course of action. The agency is only required to take a "hard look" at the environmental consequences before making its decision. Sabine River Authority, 951 F.2d at 676. NEPA does not prohibit projects that are patently destructive of the environment; it simply requires that the agency collect, study, and disseminate the data regarding the project's environmental consequences or impacts. Id.

Plaintiffs' contention that the Environmental Assessment was inadequate is without merit. The Environmental Assessment includes discussion of, among other things, the surrounding terrain and land use, traffic projections and congestion management system commitments, and potential social, economic and environmental effects (including the impact on lakes, rivers, and streams, water quality, air quality, noise, and endangered species and wildlife habitats).

Based upon the evidence presented at this stage, and the applicable law, the court finds that Defendants have satisfied the requirements of NEPA. The court concludes that the evidence submitted by Plaintiffs' is insufficient for a showing of substantial likelihood of prevailing on the merits of their NEPA claims.

With respect to Plaintiffs' 4(f) claims, Defendants have presented evidence that the Park meets part of the above-discussed 23 C.F.R. § 771.135(h) exemption from the 4(f) requirements in that a portion of the Park was reserved for transportation purposes prior to its designation as park land, though such is disputed by Plaintiffs. More problematic is the exemption's requirement that an adequate effort was made to identify 4(f) properties prior to prior to acquisition; however, as noted above, Defendants presented testimony that the Project did not impact any 4(f) properties.

8

Although the 4(f) claims are hotly disputed, the court concludes that there has not been a showing of a substantial likelihood that Plaintiffs will prevail on the merits of such claims. Plaintiffs may or may not prevail on the merits.

### B. Substantial Threat of Irreparable Injury

"Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent[,] or at least of long duration, [that is], irreparable." Amoco Production Company v. Village of Gambell, Alaska, 480 U.S. 531, 545 (1987). "If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." Id. Under the facts in Amoco, however, injury to the subsistence resources from oil exploration was not at all probable and there was error in directing issuance of a preliminary injunction. Id. at 545-46. Plaintiffs insist that harm to the environment will occur if a contract is awarded and the Project is constructed. Defendants contend that Plaintiffs have failed to show any injury is sufficiently likely to occur without a preliminary injunction.

Plaintiffs' claims of general environmental harm to the land and bodies of water near the Project are speculative. Moreover, Plaintiffs have not established their claims as comparable to actions that would hasten the extinction of a species of wildlife or would result in lands or water being rendered unusable. The court concludes that Plaintiffs have failed to demonstrate a substantial threat of irreparable injury.

### C. Balancing Threatened Injury/Disservice of Public Interest

Plaintiffs claim that their injury from denial of the injunction outweighs any threatened harm the injunction may do to Defendants. Plaintiffs correctly recognize that the public has an interest in avoiding harm to the environment and ensuring that government agencies comply with federal

9

environmental statutes before undertaking projects that may impact the environment.

Defendants presented testimony that the federal funding would not be available after fiscal year 2000, and insist that a preliminary injunction might cause the loss of funding and prevent the Project from being completed. Defendants also presented testimony that traffic problems would worsen on O'Connor Boulevard with projected future growth and that the Project would alleviate those problems. Testimony was also presented that the widening of O'Connor Boulevard would increase safety and result in fewer accidents, particularly from vehicles crossing the center line. Finally, there was testimony opining that delaying the Project would be contrary to the public interest, particularly in light of traffic congestion and elected officials having recognized the need for the Project by approving it.

An important public interest exists in maintaining the environment, but there is also an important public interest in roadway development to alleviate traffic congestion and improve traffic safety. Traffic congestion and traffic safety are issues for consideration in balancing the harms to the parties and in considering the public interest. See Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430, 444 (5th Cir. 1981) (holding that serious traffic and safety problems resulting from overcrowded highways indicate harm to the public that should not be outweighed by harm to the plaintiffs until they have proven that NEPA was violated). The court concludes that Plaintiffs have not shown that the threatened injury from denying the injunction outweighs the harm that would be done to Defendants and the public interest if the injunction were granted.

## IV. Conclusion

For the reasons stated herein, Plaintiffs have failed meet any of the four criteria necessary to establish that they are entitled to a preliminary injunction. Accordingly, Plaintiffs' Motion for Preliminary Injunction is **denied**.

**SO ORDERED** this *15th* day of **January**, 1999.

Sam A. Lindsay
United States District Judge

11